IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

CX REINSURANCE COMPANY           *
LIMITED, f/k/a CNA
REINSURANCE COMPANY LIMITED      *
1 Royal Exchange Avenue
Suite 306                        *
London EC3V 3LT
United Kingdom,                  *
                *Plaintiff*,
                *

v.
                *

BRENTWOOD PROPERTIES, LLC
9005 Forest Oak Road             *
Owings Mill, Maryland 21117
                *

    SERVE ON:
    Paul L. Taylor, Jr.          *
    9005 Forest Oak Road
    Owings Mills, Maryland 21117 *        Civil Action No.: _____

AND                              *

CHASE MANAGEMENT, INC.           *
1007 North Charles Street
Baltimore, Maryland  21201       *

    SERVE ON:                    *
    Ira C. Cooke, Esquire
    36 S. Charles Street         *
    Baltimore, Maryland 21201
                *

PAUL L. TAYLOR, JR.
324 Main Street                  *
Laurel, Maryland 20707
AND                              *

DE'ASIA WILSON                   *
1836 North Washington Street
Baltimore, Maryland 21213        *

AND                              *

DAVID WILSON, JR.                        *
1836 North Washington Street
Baltimore, Maryland 21213                *

          *Defendants*.              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, CX Reinsurance Company Limited, formerly known as CNA Reinsurance Company Limited ("CX Re"), by its undersigned counsel, hereby sues Defendants Brentwood Properties, LLC ("Brentwood"), Chase Management, Inc. ("Chase Management"), Paul L. Taylor, Jr. ("Mr. Taylor"), De'Asia Wilson ("Ms. Wilson"), and David Wilson, Jr. ("Mr. Wilson") for a declaratory judgment and decree, and states:

### THE NATURE OF THIS ACTION

1. This is a complaint for declaratory relief under 28 U.S.C. § 2201. CX Re seeks a declaration of the parties' rights and obligations under general liability insurance policies CX Re issued to Chase Management identified by policy numbers CNAGL1281-99 and CNAGL 1363-00 (collectively, the "Policies"), which provide certain coverage to Chase Management and other named and defined insureds. CX Re asks the Court to declare that, due to an exclusion contained in the Policies, to be entitled to a defense or indemnity in connection with a lawsuit Mr. Wilson and Ms. Wilson filed in the Circuit Court for Baltimore City styled *Wilson, et al. v. Brentwood Properties LLC, et al.*, Case No. 24-C-18-000615 (the "Underlying Action"), Brentwood or any other person who may be an insured under the Policies in connection with the Underlying Action (collectively, the "Insureds") must show that an exception to that exclusion applies and, because no Insured has made that showing, CX Re does not have an obligation to provide a defense or indemnity for the Underlying Action.

THE PARTIES

2. Plaintiff CX Re is in the insurance business. It is organized under the laws of the United Kingdom, and has its principal place of business at 1 Royal Exchange Avenue, Suite 306, London EC3V 3LT, United Kingdom. Formerly a part of CNA Financial Corporation, CX Reinsurance was acquired on or about November 1, 2002 by Tawa U.K. Ltd. and subsequently renamed CX Reinsurance Company Ltd.

3. Defendant Brentwood Properties, LLC is named as an insured under the Policies and identified therein as "Brentwood Properties" and "Brentwood Management." Upon information and belief, the Policies were issued, in part, in connection with Brentwood's business of owning and/or managing rental housing in Baltimore, Maryland. Brentwood is a forfeited Maryland corporation. Its stated principal place of business and resident agent are in Owings Mills, Maryland.

4. Defendant Chase Management is the first-named insured under the Policies, and is named as an insured in connection with the property at issue in the Underlying Action. Although not joined as a defendant in the Underlying Action, Chase Management might claim an interest in the relief sought in this action in connection with the Policies and Chase Management's business of owning or managing rental housing in Baltimore, Maryland. This Complaint For Declaratory Relief includes Chase Management among the persons referred to as "Insureds" for ease of reference, and without prejudice to whether it satisfies the factual predicates to be an insured under the Policies in connection with the Underlying Action. Chase Management is a forfeited Maryland corporation. Its stated principal place of business and resident agent are in Baltimore, Maryland.

5. Upon information and belief, Defendant Paul L. Taylor, Jr. is, or at times pertinent to this action was, affiliated with Brentwood. Due to that affiliation, Mr. Taylor may be or claim to be an insured under the Policies, which were issued to Chase Management and Brentwood, among others, in connection with their business of owning or managing rental housing in Baltimore, Maryland. This Complaint For Declaratory Relief includes Mr. Taylor among the persons referred to as "Insureds" for ease of reference, and without prejudice to whether he satisfies the factual predicates to be an insured under the Policies in connection with the Underlying Action. Upon information and belief, Mr. Taylor is a Maryland citizen residing in Prince George's County, Maryland.

6. Defendant De'Asia Wilson is one of the two underlying plaintiffs who filed the Underlying Action, in which she alleges she was injured as a minor by exposure to paint or dust containing lead or lead pigment. Ms. Wilson is a Maryland citizen residing in Baltimore, Maryland. Ms. Wilson is not an insured and has no rights under the Policies. CX Re joins Ms. Wilson as a defendant herein solely because she may claim an interest in the matter before the Court, though CX Re denies that Ms. Wilson has a legally cognizable interest in the Policies.

7. Defendant David Wilson, Jr. is the other underlying plaintiff. He also alleges that he was injured as a minor by exposure to paint or dust containing lead or lead pigment. Mr. Wilson is a Maryland citizen residing in Baltimore, Maryland. Mr. Wilson is not an insured and has no rights under the Policies. CX Re joins Mr. Wilson as a defendant herein solely because he may claim an interest in the matter before the Court, though CX Re denies that Mr. Wilson has a legally cognizable interest in the Policies.

JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case in accordance with 28 U.S.C. § 1332(a)(2) because this is an action between CX Re, which is a citizen or subject of a foreign state, and the defendants, who are citizens of the State of Maryland, and because the amount in controversy under the Policies exceeds the sum or value of $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over the defendants because they are either Maryland entities, with their principal place of business in Maryland, or natural persons domiciled in Maryland.

10. This judicial district is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because the defendants all reside in Maryland and the events giving rise to the claim occurred in this judicial district. In addition, the defendants are subject to personal jurisdiction in this district and this action arises out of a dispute concerning insurance policies that the Insureds have asserted covers a property located in this district, allegedly creating obligations in connection with a lawsuit filed in the Circuit Court for Baltimore City in Baltimore, Maryland.

FACTS COMMON TO ALL COUNTS

A. The Underlying Action

11. The Underlying Action was filed on or about February 2, 2018. A true and accurate copy of the complaint in the Underlying Action is attached hereto as Exhibit A.

12. According to the complaint in the Underlying Action, Mr. Wilson and Ms. Wilson "resided, visited, and spent significant amounts of time at" a property known as 1518 Brentwood Avenue ("the Property") in Baltimore, Maryland "from approximately 1999 through approximately 2000." Id. at 3.

13. Mr. Wilson and Ms. Wilson allege in the Underlying Action that the defendants in that case owned the Property "[d]uring the years that Plaintiffs resided or spent time at the leased premises[.]" *Id.* at 4.

14. Mr. Wilson and Ms. Wilson claim they were injured by exposure to lead at the Property. Specifically, Mr. Wilson and Ms. Wilson allege that, while residing at the Property, they "ingested and consumed paint, and paint dust . . . contain[ing] lead pigment and lead, thereby causing Plaintiffs to suffer severe and unremitting illnesses, injuries and infirmities, " including lead poisoning, severe physical pain, emotional anguish, and brain injury. *Id.* at 4-8.

15. The complaint in the Underlying Action purports to state claims against the Insureds for negligence, violation of consumer protection act, and negligent misrepresentation, and for each of those claims, demands damages in an amount in excess of $75,000.00. *Id.*

B.  The Insureds' Tender and the Pertinent Terms of the Policies

16. The Insureds tendered the Underlying Action to CX Re for defense.

17. The Policies have the effective dates of August 25, 1999 to February 1, 2000 (Policy No. CNA GL1281-99) and from February 1, 2000 to February 1, 2001 (Policy No. CNA GL1363-00).

18. The Policies' insuring agreement provides, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . . We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> \* \* \*
>
> This insurance applies to "bodily injury" . . . only if:
> (1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" . . . occurs during the policy period.

19. Brentwood is identified as an insured under the Policies. Mr. Taylor is not named as an insured but may be covered under the Polices' definition of an insured if he can establish that he fell within that definition at the pertinent time.

20. As defined by the Policies, "[b]odily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time"; "[o]ccurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"; and "coverage territory" includes "[t]he United States of America."

21. The Policies include an endorsement titled "COVERAGE LIMITATION – LEAD CONTAMINATION" that contains the following exclusion, in pertinent part:

SECTION I - EXCLUSIONS

This insurance does not apply to:

\* \* \*

(3) "Bodily injury" . . . arising out of the ingestion, inhalation, absorption of, or exposure to, lead, lead-paint or other lead-based products of any kind, form or nature whatsoever.

22. Subparagraph (a) of Section II of the endorsement, however, grants coverage under the following pertinent condition:

SECTION II - COVERAGE LIMITATION

(a.) Exclusion (3) above does not apply to and we will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" . . . arising out of the Ingestion, Inhalation, absorption of, or exposure to lead, lead-paint or other lead-based products of any kind, form or nature whatsoever to which the insurance provided by this endorsement applies. We will have the right and duty to defend any "suit" seeking those damages.

> We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

23. The coverage afforded in subparagraph (a) is qualified by subparagraph (b), which provides, in pertinent part:

> (b) This insurance applies to "bodily injury" . . . only if:
>
> * * *
>
> (4) For "bodily injury" a lead level in blood, bone or body tissue in excess of the "safe level" is first diagnosed by a State licensed physician or other State licensed health care provider during this policy period[.]

24. The term "safe level" is defined in the endorsement to mean "10 micrograms of lead per deciliter of blood as prescribed by the Centers For Disease Control."

C.     CX Re's Provision of a Defense Under a
<u>Reservation of Rights and Disclaimer of Indemnity</u>

25. CX Re disclaimed any obligation under the Policies to defend or indemnify the Insureds for the Underlying Action. CX Re nonetheless undertook to participate in the Insureds' defense of the Underlying Action subject to a full reservation of rights.

D.     The Policies Do Not Apply to the Claims
<u>Stated Against the Insureds in the Underlying Action</u>

26. Based on the terms of the Policies and the allegations of the complaint in the Underlying Action, CX Re does not have a duty to defend or indemnify the Insureds in connection with the Underlying Action.

27. The complaint in the Underlying Action is a "suit" seeking damages for "bodily injury" that allegedly took place within the "coverage territory" during each of the policy periods.

28. Under the exclusion contained in the COVERAGE LIMITATION – LEAD CONTAMINATION endorsement, however, any coverage otherwise afforded by the Policies "does not apply" because Mr. Wilson's and Ms. Wilson's bodily injuries allegedly arose out of the ingestion and consumption of "paint[] and paint dust . . . contain[ing] pigment and lead[.]"

29. To restore coverage that is otherwise excluded by the COVERAGE LIMITATION – LEAD CONTAMINATION endorsement, the Insureds must prove that an exception to the exclusion applies.

30. The potentially applicable exception requires that the Insureds demonstrate that Mr. Wilson and/or Ms. Wilson were first diagnosed with lead levels in excess of the "safe level" of 10 micrograms of lead per deciliter during the policy periods beginning August 25, 1999 and ending February 1, 2000 and beginning February 1, 2000 and ending February 1, 2001 (the Policies' effective dates).

31. None of the Insureds have met their burden to show that this, or any, exception to the exclusion contained in the COVERAGE LIMITATION – LEAD CONTAMINATION endorsement applies.

32. Furthermore, CX Re is unaware of any facts that would support application of any exception to the exclusion.

33. The Insureds therefore have not met and, upon information and belief, cannot meet their burden to establish an exception to the exclusion contained in the COVERAGE LIMITATION – LEAD CONTAMINATION endorsement.

34. Accordingly, the exclusion applies, coverage under the Policies "does not apply," and the Insureds are not entitled to indemnity from CX Re for any liability they may be determined to have in connection with the Underlying Action.

35. For the same reason, the Insureds are not entitled to a defense from CX Re in connection with the Underlying Action.

## COUNT I – DECLARATORY JUDGMENT

36. CX Re incorporates by reference the averments stated in the foregoing paragraphs as if fully set forth herein.

37. In accordance with 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, this Court is authorized to declare the rights and other legal relations of a party seeking a declaratory judgment in a matter of actual controversy within the Court's jurisdiction.

38. As a consequence of demands made by the Insureds upon CX Re, there exists an actual controversy within the Court's jurisdiction as to whether CX Re has an obligation to provide a defense or liability coverage to any of the Insureds in connection with the Underlying Action.

39. By its plain meaning, the complaint in the Underlying Action seeks damages for "bodily injury" allegedly arising out of ingestion and exposure to lead or lead paint.

40. The Insureds therefore must establish that Mr. Wilson and Ms. Wilson were "first diagnosed" with lead levels in excess of the "safe level" during the policy periods.

41. None of the Insureds have shown that Mr. Wilson and Ms. Wilson were diagnosed with lead levels in excess of the "safe level" during the policy periods.

42. For this reason, CX Re does not have a duty to defend any of the Insureds in the Underlying Action.

43. For the same reason, CX Re does not have an obligation to indemnify any of the Insureds for any liability arising from the Underlying Action.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff CX Reinsurance Company Limited respectfully requests that this Court issue declarations that:

A. The COVERAGE LIMITATION – LEAD CONTAMINATION endorsement applies under the circumstances of the Underlying Action;

B. Brentwood Properties, LLC, Chase Management, Inc., or Paul L. Taylor, Jr. bear the burden of establishing the applicability of an exception to the COVERAGE LIMITATION – LEAD CONTAMINATION endorsement;

C. Brentwood Properties, LLC, Chase Management, Inc., or Paul L. Taylor, Jr. have not shown the applicability of an exception to the COVERAGE LIMITATION – LEAD CONTAMINATION endorsement;

D. CX Reinsurance Company Limited does not have a duty to defend Brentwood Properties, LLC or Paul L. Taylor, Jr. in connection with the Underlying Action; and

E. CX Reinsurance Company Limited does not have an obligation to indemnify any person, including without limitation Brentwood Properties, LLC, Chase Management, Inc., and Paul L. Taylor, Jr., in connection with any settlement they may enter to resolve, or any liability they may be determined to have, in connection with the Underlying Action.

Respectfully submitted this 24th day of January, 2019.

                                        /s/
Stuart M.G. Seraina (Bar No. 25971)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
sseraina@kg-law.com
sniazy@kg-law.com
Telephone:  410-752-6030
Fax:  410-539-1269

*Attorneys for Plaintiff,*
*CX Reinsurance Company Limited*